UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| CHARLES WAYNE ADAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:21-cv-00761-TWP-MPB |
| | ) | |
| WEXFORD HEALTH SOURCES, INC., et al. | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER SCREENING COMPLAINT, DISMISSING MISJOINED CLAIM WITHOUT PREJUDICE, AND DIRECTING SERVICE OF PROCESS**

Plaintiff Charles Wayne Adams, an inmate at Pendleton Correctional Facility, filed this lawsuit alleging that the defendants have failed to properly treat his heart condition and other ailments. Mr. Adams has paid the filing fee. Because he is a "prisoner" as defined by 28 U.S.C. § 1915A(c), this Court has an obligation under 28 U.S.C. § 1915A(a) to screen his complaint before service on the defendants.

**I.
Screening Standard**

Pursuant to 28 U.S.C. § 1915A(b), the Court must dismiss the complaint, or any portion of the complaint, if it is frivolous or malicious, fails to state a claim for relief, or seeks monetary relief against a defendant who is immune from such relief. In determining whether the complaint states a claim, the Court applies the same standard as when addressing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017). To survive dismissal,

> [the] complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

1

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Pro se complaints such as that filed by the plaintiff are construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

## II.
## The Complaint

The complaint names sixteen defendants: (1) Wexford Health Sources, Inc.; (2) Wexford of Indiana, LLC; (3) Dr. Paul A. Talbot; (4) Dr. Michael Mitcheff; (5) Michelle Laflower; (6) V. Shepherd; (7) Laura Bodkin; (8) Warden Dushan Zatecky; (9) Dr. William; (10) Vanness; (11) IDOC Chief Medical Officer; (12) Dr. M. Knieser; (13) Daniel Conn; (14) Doug Lane; (15) Lisa Bergeson; and (16) Commissioner Robert E. Carter.

The following allegations are set forth in MR. Adams' complaint. Mr. Adams' medical history includes a prior heart attack, two strokes, and episodes of atrial fibrillation. He suffers chest pain, a slow heartbeat, dizziness, falls, and fatigue.

### A. Allegations against Dr. Talbot

Dr. Talbot ordered daily EKGs for Mr. Adams. Dr. Talbot told Mr. Adams that the EKGs showed that Mr. Adams had major heart problems, but Dr. Talbot provided no treatment in response. Mr. Adams went on to develop congestive heart failure.

On March 14, 2019, an X-ray technician showed Mr. Adams' X-rays to Dr. Talbot. Dr. Talbot failed to inform Mr. Adams that he was suffering from congestive heart failure. Dr. Talbot took no action to alleviate Mr. Adams' excruciating pain or otherwise treat his condition.

On March 29, 2019, the X-ray technician called Dr. Talbot and demanded that he come to the X-ray suite immediately. The X-ray technician told Dr. Talbot that Mr. Adams' condition was

much worse than it had been on March 14, 2019, and that Mr. Adams must be taken to the hospital. Dr. Talbot made Mr. Adams wait in pain without treatment for three hours. Mr. Adams was then transported to the emergency room without medical assistance during the transport. At the hospital, the examining physician said that Mr. Adams needed to be transported to Indianapolis for treatment. A cardiologist said Mr. Adams would not survive the trip to Indianapolis, so he stayed in that hospital's cardiac intensive care. His heart function was measured at 35%.

On three occasions, Dr. Paul A. Talbot has confined Mr. Adams in an isolation cell without a working intercom after Mr. Adams' complained of angina and atrial fibrillation.

### B. Allegations against Dr. Knieser

In July 2020, Mr. Adams began seeing blood in his urine and he took a sample to the prison medical provider. A nurse called Dr. Knieser at home. Dr. Knieser examined Adams the next morning and punched Mr. Adams in the kidney with his fist to see how much pain Mr. Adams could withstand.

After Mr. Adams endured four days of pain, Dr. Knieser finally passed off Mr. Adams' care to a nurse practitioner who told Dr. Knieser that Mr. Adams needed to go to the hospital. Mr. Adams was again transported to the hospital. He was admitted to cardiac intensive care due to heart inflammation and a kidney and urinary tract infection.

### C. Allegations against Dr. Mitcheff

Dr. Mitcheff has twice refused Mr. Adams' request to be seen by his outside cardiologist. Dr. Mitcheff also ordered that Mr. Adams no longer be allowed to keep his medication on his person. Instead, Dr. Mitcheff required Mr. Adams to walk half a mile, and up and down stairs, to reach the pharmacy medication window for his medications. Mr. Adams' condition worsened after these changes to his care.

**D. Allegations against Other Defendants**

Mr. Adams often goes as long as 30 days without refills for his heart medications, although he does not allege who is responsible for these delays.

Wexford has refused to approve Mr. Adams for a pacemaker. His injuries are a result of Wexford's custom and practice of denying or delaying medical care for the goal of saving money.

Defendants Wexford, Conn, Lane, Bergeson, Mitcheff, Talbot, and Kneiser maintain a policy of allowing nurses to make medical diagnoses and serve as gatekeepers to access to healthcare. Defendants Laflower, Shepherd, Bodkin, Zatecky, Carter, and VanNess fail to review Wexford's policies and instead allow the medical defendants to suborn the illegal practice of medicine by nurses.

Defendants Shepherd and Bodkin deprived Mr. Adams of access to the grievance process on some occasions. On another occasion, defendant Warden Zatecky responded to Mr. Adams' grievance by saying the grievance process provided no relief for medical care claims.

Mr. Adams seeks injunctive relief and compensatory and punitive damages.

## III.
## Discussion of Claims

Applying the screening standard to the factual allegations in the complaint, certain claims are dismissed while other claims shall proceed as submitted.

**A. Dismissed Claims**

First, Mr. Adams' claim that defendants Shepherd, Bodkin, and Zatecky have not provided legitimate access to administrative remedies is **dismissed** for failure to state a claim. There is no constitutional right to a prison grievance process, but there is a First Amendment right to access the courts. If prison officials deny an inmate access to the grievance process, those officials cannot

4

later assert the affirmative defense of failure to exhaust administrative remedies. Therefore, plaintiffs who are denied access to the prison grievance process can bring their claims to court, as Mr. Adams has done in this action. *See Hill v. Snyder*, 817 F.3d 1037, 1041 (7th Cir. 2016).

Second, Mr. Adams' claims against Michelle LaFlower, Robert E. Carter, Jr., Dr. William, VanNess, IDOC Chief Medical Officer, Daniel Conn, Doug Lane, and Lisa Bergeson are **dismissed**. The complaint alleges that these defendants enacted or condoned a triage policy that permitted nurses to improperly make medical diagnoses and to act as gatekeepers to medical care. Dkt. 2 at 8. But the complaint does not allege that Mr. Adams was ever improperly diagnosed by a nurse or kept from seeing a doctor due to the alleged triage policy. Thus, he has failed to state a claim for which relief can be granted.

### B. Misjoined Claim

Mr. Adams' claim against Dr. Kneiser is misjoined. Generally, a party asserting a claim may join "as many claims as it has against an opposing party," Fed. R. Civ. P. 18(a), and persons "may be joined in one action as defendants if . . . any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences," Fed. R. Civ. P. 20(a)(2)(A).

Mr. Adams' claim against Dr. Kneiser is distinct from his claims against Dr. Talbot and Dr. Mitcheff. To be "discrete and separate . . ., one claim must be capable of resolution despite the outcome of the other claim." *Gaffney v. Riverboat Servs. of Ind., Inc.*, 451 F.3d 424, 442 (7th Cir. 2006) (internal quotation marks omitted). Mr. Adams' claim against Dr. Kneiser relates to his kidney and urinary tract infection, while his claims against Dr. Talbot and Dr. Mitcheff relate to his heart condition.

Therefore, the claim against Dr. Kneiser is **dismissed without prejudice**. If Mr. Adams wishes to pursue this claim, he may file a separate action or notify the Court **by July 30, 2021**, that he wishes for this claim to be severed from this case into a new civil action.

If Mr. Adams pursues his claim against Dr. Kneiser in a new action, Mr. Adams will be assessed a filing fee.

### C. Claims Which Shall Proceed

Finally, Mr. Adams' Eighth Amendment deliberate indifference claims against Dr. Paul A. Talbot, and Dr. Michael Mitcheff **shall proceed** as pleaded in the complaint. Mr. Adams' policy and practice claim against Wexford of Indiana, LLC, **shall proceed** as pleaded in the complaint.[1]

### IV. Preliminary Injunction

In his request for relief, Mr. Adams includes a request for preliminary injunction requiring, among other things, that Mr. Adams been treated by his offsite cardiologist. "A preliminary injunction is an extraordinary equitable remedy that is available only when the movant shows clear need." *Turnell v. Centimark Corp.*, 796 F.3d 656, 661 (7th Cir. 2015). "To survive the threshold phase, a party seeking a preliminary injunction must satisfy three requirements." *Valencia v. City of Springfield, Illinois*, 883 F.3d 959, 966 (7th Cir. 2018) (internal quotations omitted)). It must show that: (1) "absent a preliminary injunction, it will suffer irreparable harm in the interim period prior to final resolution of its claims"; (2) "traditional legal remedies would be inadequate"; and (3) "its claim has some likelihood of succeeding on the merits." *Id.* Only if the moving party meets these threshold requirements does the court then proceed to the balancing phase of the analysis. *Id.* In the balancing phase, "the court weighs the irreparable harm that the moving party would

---

[1] Mr. Adams also names Wexford Health Sources, Inc. as a defendant but Wexford of Indiana, LLC is the proper defendant. The **clerk is directed** to terminate Wexford Health Sources, Inc. as a defendant on the docket.

6

endure without the protection of the preliminary injunction against any irreparable harm the nonmoving party would suffer if the court were to grant the requested relief." *Id*. If Mr. Adams wishes to pursue preliminary injunction, he shall file a separate motion for preliminary injunction addressing the requirements discussed above.

V.
**Conclusion and Service of Process**

Eighth Amendment deliberate indifference claims against Wexford of Indiana, LLC, Dr. Talbot, Dr. Mitcheff, and Dr. Knieser are proceeding in this action. This summary of remaining claims includes all the viable claims identified by the Court. All other claims have been dismissed. If the plaintiff believes that additional claims were alleged in the complaint, but not identified by the Court, he shall have **through July 30, 2021,** in which to identify those claims. He shall also have **through July 30, 2021,** in which to request the Court to sever his claim against Dr. Knieser into a new civil action.

The **clerk is directed** pursuant to Fed. R. Civ. P. 4(c)(3) to issue process to defendants Wexford of Indiana, LLC, Dr. Talbot, and Dr. Mitcheff in the manner specified by Fed. R. Civ. P. 4(d). Process shall consist of the complaint (dkt. [2]), applicable forms (Notice of Lawsuit and Request for Waiver of Service of Summons and Waiver of Service of Summons), and this Order.

The **clerk is directed** to serve Wexford of Indiana, LLC, electronically. Defendant Talbot is identified as an employee of Wexford of Indiana, LLC. A copy of this Order shall be served on Wexford electronically.

Wexford is ORDERED to provide the full name and last known home address of any defendant who does not waive service if they have such information. This information may be provided to the Court informally or may be filed ex parte.

The **clerk is directed** to terminate Wexford Health Sources, Inc., Michelle LaFlower, V. Shepherd, Laura Bodkin, Dushan Zatecky, Dr. Kneiser, Dr. William, VanNess, IDOC Chief Medical Officer, Daniel Conn, Doug Lane, Lisa Bergeson, and Robert E. Carter as defendants on the docket.

**IT IS SO ORDERED**

Date: 6/30/2021

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

CHARLES WAYNE ADAMS
36225
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Dr. Paul Talbot
PENDLETON CORRECTIONAL FACILITY
4490 W. Reformatory Rd.
Pendleton, IN 46064

Electronic service to Indiana Department of Correction:

    Dr. Michael Mitcheff, Medical Director
        (Employed at IDOC Central Office)

Electronic service to Wexford of Indiana, LLC